IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ZUCKER FEATHER PRODUCTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2:14-cv-04298-NKL |
| v. | ) |
| | ) |
| HOLIDAY IMAGE, LLC, | ) |
| | ) |
| Defendant. | ) |

## <u>ORDER</u>

Plaintiff Zucker Feather Products filed this lawsuit against Defendant Holiday Image alleging breach of contract, suit on account, quantum meruit, and unjust enrichment. Zucker Feather alleges that it entered into agreements with Holiday Image whereby Zucker Feather would manufacture and deliver feather wing products for non-party Victoria's Secret, that the wings were manufactured and delivered as requested, and that Holiday Image failed to pay the invoices on those agreements. Before the Court is Holiday Image's Motion to Dismiss for Lack of Personal Jurisdiction, [Doc. 18]. For the reasons set forth below, the Motion is denied.

**I.  Background[1]**

Plaintiff Zucker Feather Products is a Missouri corporation with its principal place of business in California, Missouri. It has a factory in China and a showroom in New

---

[1] The following facts are taken from the Complaint and the declarations of Matthew Schwam, [Doc. 18-2], and Jeannie Pratt, [Doc. 26-1].

1

York. Defendant Holiday Image is a Delaware limited liability company. It has two members, both of whom reside in New York. Zucker Feather manufactures and supplies wholesale feather products. Holiday Image provides custom holiday décor and seasonal visual displays to malls, store, hotels, and office buildings.

In 2011, Holiday Image approached Zucker Feather and asked for assistance in designing and manufacturing angel wings for Holiday Image to be delivered to Victoria's Secret for the 2011 holiday season. Zucker Feather provided feathers to Holiday Image so that it could prepare samples to present to Victoria's Secret in an effort to secure a bid. Holiday Image was ultimately awarded the wings bid with Victoria's Secret.

Thereafter, Holiday Image submitted purchase orders to Zucker Feather for the mass production of wings in 2011, 2012, 2013, and 2014. Over a four year period, Holiday Image sent a total of twenty-five purchase orders to Zucker Feather in Missouri, totaling approximately $4.3 million in products and services. These purchase orders were confirmed by Zucker Feather with a sales confirmation form. In preparation for each holiday season, Victoria's Secret sent Holiday Image designs and examples to be replicated. Zucker Feather employees and Holiday Image employees worked together in New Jersey to develop prototype replicas of samples sent to Holiday Image from Victoria's Secret. The samples and prototypes were then sent to Zucker Feather in Missouri, where Zucker Feather employees measured, photographed, and dissected the wings in order to determine how to reconstruct them for mass production and to determine cost. Prototypes were also created at Zucker Feather's Missouri location and sent to Holiday Image for approval or correction. Samples and instructions were then

2

sent from Zucker Feather in Missouri to its factory in China for mass production. The wings were shipped from China directly to Victoria's Secret in Ohio.

Although the wings were manufactured in Zucker Feather's Chinese factory, Zucker Feather employees performed several tasks necessary for the completion of the purchase orders in Missouri, including: coordination of all aspects of manufacturing the product, creating and reviewing wing specifications and prototypes, preparing and testing samples to be sent to Holiday Image, arranging for the sourcing of the feathers to be used in the wings, preparing daily instructions for the factory, and preparing production schedules, customs documents, and shipping information. Zucker Feather permitted Holiday Image to purchase the wings on credit with an initial down payment. The down payment and final payment were paid to Zucker Feather in Missouri.

Holiday Image visited Zucker Feather's Chinese factory, visited Zucker Feather's showroom in New York, and hosted Zucker Feather representatives at its New Jersey location, but Holiday Image representatives never travelled to Missouri. Instead, over the course of their relationship, Holiday Image employees sent more than 1,500 emails to Zucker Feather in Missouri related to the fulfillment of the purchase orders. Several Holiday Image employees called Zucker Feather employees in Missouri. Holiday Image sent dozens of samples, prototypes, and specification books to Zucker Feather in Missouri for the purpose of completing the purchase orders.

The purchase orders at issue in this case were submitted by Holiday Image to Zucker Feather's Missouri facility in July and September 2014. In March 2014, Holiday Image representatives approached a Zucker Feather representative at a trade show in Las

3

Vegas and asked Zucker Feather to prepare feather samples for the 2014 holiday wings. Zucker Feather employees selected hundreds of feathers and sprayed them with various paints, and completed samples were sent from Missouri to Holiday Image in April 2014. In May 2014, Holiday Image sent wing specifications and feather samples to Zucker Feather in Missouri. Zucker Feather analyzed the specifications and feathers and started the process of pricing the wings, sourcing the feathers, and preparing detailed factory instructions. That same month, representatives from Zucker Feather and Holiday Image spoke at length over the telephone regarding the use of certain feathers and techniques. From June 2014 to September 2014, Holiday Image sent Zucker Feather more than 200 emails and called Zucker Feather approximately 160 times at its Missouri location. These emails and phone calls were related to wing sampling, wing dimensions, pricing updates, corrective action plans, coordination of samples with existing prototypes, packing specifications, feather sourcing, factory visit arrangements, shipping specifications, delivery, and customs. In August and September 2014, Zucker Feather issued sales confirmations confirming each of the purchase orders.

The 2014 wing orders were manufactured in China and timely delivered to Victoria's Secret in Ohio. Zucker Feather then issued invoices to Holiday Image reflecting the total amount due for each purchase order with final payment from Holiday Image due on September 30, 2014. Despite multiple demands by Zucker Feather, $534,303.43 remains outstanding under the invoices.

II.     Discussion

Holiday Image argues that Zucker Feather's claims against it must be dismissed

4

Case 2:14-cv-04298-NKL   Document 39   Filed 03/19/15   Page 4 of 16

for lack of personal jurisdiction. In particular, Holiday Image contends that this Court cannot exercise specific personal jurisdiction over it because its contacts are insufficient to trigger Missouri's long-arm statute and inconsistent with the Due Process Clause of the Fourteenth Amendment. Zucker Feather argues that Holiday Image has sufficient contacts to establish either general or specific personal jurisdiction, but focuses primarily on the existence of specific personal jurisdiction in its brief opposing dismissal. As the party asserting that personal jurisdiction exists, Zucker Feather has the burden of proving facts sufficient to make a prima facie showing of jurisdiction. *See Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008).

Specific personal jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). It depends on an "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011). Specific personal jurisdiction exists only to the extent permitted by Missouri's long-arm statute and the Due Process Clause. *Id.*

### A. Missouri's Long-Arm Statute

Missouri's long-arm statute authorizes personal jurisdiction over defendants who, among other actions, transact business, make a contract, or commit a tort within the state. Mo. Rev. Stat. § 506.500; *Viasystems*, 646 F.3d at 593. Zucker Feather has presented sufficient evidence to establish that the 2014 holiday wing contracts were made in

5

Missouri, and therefore, Missouri's long-arm statute permits the exercise of personal jurisdiction. *See* Mo. Rev. Stat. § 506.500(2). "A contract is made in Missouri if the final act which gives rise to a binding agreement occurs within [Missouri]." *U.S. Durum Milling, Inc. v. Frescala Foods, Inc.*, 785 F.Supp. 1369, 1371-72 (E.D. Mo. 1992). It is undisputed that Holiday Image sent the 2014 purchase orders from New Jersey to Zucker Feather in Missouri and that Zucker Feather then issued sales confirmations of those orders in Missouri. *See e.g.*, [Doc. 26-1, pp. 49-52]. The sales confirmations were acceptances of Holiday Image's offers to buy, and therefore, the final act creating the contracts occurred in Missouri.

Holiday Image argues that rather than offers to buy, the purchase orders were acceptances of offers to sell and therefore, the final act creating the binding contracts occurred in New Jersey, not Missouri. In support of this argument, Holiday Image points to portions of an affidavit submitted by a Zucker Feather representative who stated that "[a]ll the pricing for the wings . . . was prepared by Zucker employees in Missouri" and that Zucker Feather representatives spoke at length about the feathers used for the wings and the cost for the feathers and construction. *See* [Doc. 26-1, pp. 4, 7, ¶¶ 8, 16]. Holiday Image contends that the discussions regarding the feathers "culminated in Zucker's bids to sell the goods at issue, which were conveyed by telephone and email, and respectively accepted by Holiday Image's various purchase orders." [Doc. 32, p. 3]. While Zucker Feather did provide pricing for the feathers and the construction of the wings, "[t]he general rule is that a price quotation is not an offer, but rather is an invitation to enter into negotiations or a mere suggestion to induce offers by others." *Brown Mach., Div. of John*

6

*Brown, Inc. v. Hercules, Inc.*, 770 S.W.2d 416, 419 (Mo. Ct. App. 1989). However, price quotes can amount to an offer creating the power of acceptance if they are detailed enough and if it "reasonably appear[s] from the price quote that assent to the quote is all that is needed to ripen the offer into a contract." *Id.*

The record in this case, however, does not establish that any price quotation given to Holiday Image constituted a valid offer. Despite arguing that price quotations were made over the telephone and email and that Zucker Feather ultimately offered to sell the wings at a specific price, Holiday Image offers no evidence that any offer was made over the telephone or email. Even if the wing specifications and pricing were described in detail, there is no evidence that the parties discussed the quantity of wings to be ordered, the delivery date for the wings, and any other specific aspects of the order prior to the purchase order submitted by Holiday Image. Because there is no evidence that the purchase orders were actually acceptances of offers to sell by Zucker Feather, the Court concludes that the purchase orders were offers to buy, and the sales confirmations created by Zucker Feather in Missouri were acceptances. Therefore, the contracts in this case were formed in Missouri, and because Holiday Image made contracts within Missouri, Missouri's long-arm statute is satisfied.

### B. Due Process Clause

Having determined that Missouri's long-arm statute authorizes this Court to exercise specific personal jurisdiction over Holiday Image, the Court must next determine whether the exercise of specific personal jurisdiction is permitted by the Due Process Clause of the Fourteenth Amendment. Due process analysis requires a determination of

7

whether Holiday Image has sufficient "minimum contacts" with Missouri such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). "The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there." *Viasystems*, 646 F.3d at 594 (internal citations and quotations omitted). "In a contract case, the court evaluates prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine whether the defendant purposefully established minimum contacts within the forum." *Dairy Farmers of America, Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 477 (8th Cir. 2012); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). Courts consider five factors in determining whether sufficient contacts exist to support the exercise of personal jurisdiction: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Dairy Farmers of America*, 702 F.3d at 477. The first three factors are primary, but all factors and the totality of the circumstances should be considered. *Id.*

Three cases decided by the Eighth Circuit, *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309 (8th Cir. 1982), *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515 (8th Cir. 2010), and *Dairy Farmers of America* are factually similar to this case,

8

and therefore guide this Court's analysis.  In *Scullin*, Scullin Steel Company, a Delaware corporation with its principal place of business in Missouri, filed suit against National Railway Utilization Corporation (NRUC), a South Carolina corporation with its principal place of business in Pennsylvania, alleging breach of contract.  *Scullin*, 676 F.2d at 310.  The lawsuit was filed in the United States District Court for the Eastern District of Missouri, and the district court dismissed the case for lack of personal jurisdiction.  *Id.*  The Eighth Circuit affirmed, concluding that not only was the exercise of personal jurisdiction not permitted by Missouri's long-arm statute, but also that NRUC did not have sufficient "minimum contacts" with Missouri to satisfy due process.   To negotiate the contract at issue, a Scullin representative travelled to Pennsylvania to meet with NRUC representatives.  No NRUC employee visited Missouri in connection with the negotiations of or amendments to the sales agreement or to supervise Scullin's performance in producing specific goods.  The products purchased by NRUC were manufactured in and shipped from Missouri, with delivery "F.O.B. St. Louis."  *Id.* NRUC remitted payment to Scullin in Missouri.  Scullin argued that "minimum contacts" existed because the products ordered by NRUC were manufactured in Missouri and delivered "F.O.B. St. Louis" and because payment for the products was remitted to Missouri.  *Id.* at 313.  The Eighth Circuit dismissed this argument, stating that the actions alleged were unilateral actions by Scullin, not NRUC, and that "[i]t is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident."  *Id.* (internal citations omitted).  The Eighth Circuit also remarked that the use of telephone and mail, the making of payments, and the provision

9

for delivery within Missouri "are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process." *Id.* at 314.

In *Wells Dairy*, Wells Dairy, an Iowa corporation, filed suit against Food Movers International (FMI), a California corporation, alleging breach of contract. *Wells Dairy*, 607 F.3d at 517. The lawsuit was originally filed in Iowa state court and removed to the United States District Court for the Northern District of Iowa, where the district court denied FMI's motion to dismiss for lack of personal jurisdiction. *Id.* On appeal, the Eighth Circuit affirmed. The record revealed that FMI contacted Wells Dairy in Iowa and requested that it be allowed to purchase product from Wells Dairy on credit. *Id.* FMI sent a credit application to Wells Dairy's Iowa location, and the credit application was processed and approved there. *Id.* Over a two year period, FMI submitted more than 100 purchase orders, totaling $6.5 million in product, to Wells Dairy in Iowa. *Id.* Orders were received and processed in Iowa, and FMI requested that the products purchased from Wells Dairy be made available for customer pickup in Iowa. *Id.* FMI spoke with Wells Dairy representatives in Iowa to resolve shipping issues or to cancel orders. FMI was invoiced from and remitted payments to Wells Dairy in Iowa. *Id.* at 517-18. The Eighth Circuit, acknowledging that FMI was not physically present in Iowa and that its contacts with Wells Dairy occurred only via telephone, facsimile, and mail, nonetheless determined that FMI's contacts with Iowa amounted to the minimum contacts required by due process. *Id.* at 519-20. The Eighth Circuit pointed to "[c]ertain meaningful events" of the parties' relationship that occurred in Iowa. *Id.* at 519. For example, FMI solicited Wells Dairy in Iowa, sought and received credit approval in Iowa, received and

10

transferred product in Iowa under the customer pickup terms of the contracts, and entered into more than 100 transactions over the course of two years, during which it relied on the Iowa company for customer support. *Id.* at 519-20. FMI also remitted payment of the goods to Iowa, so that when it failed to pay for goods – the subject of the lawsuit – the injury occurred in Iowa. *Id.* at 519. The Eighth Circuit stated that its previous decision in *Scullin*, discussed above, did not require a finding of lack of personal jurisdiction because unlike the defendant in *Scullin*, FMI solicited Wells Dairy's business knowing that it was an Iowa corporation (as opposed to the plaintiff in *Scullin* soliciting the defendant outside the forum), applied for credit with the company, received product in Iowa, and simultaneously transferred possession and title to its customers in Iowa. *Id.* at 520; *see also Dairy Farmers of America*, 702 F.3d at 477-78.

Two years after *Wells Dairy*, the Eighth Circuit decided *Dairy Farmers of America*. In *Dairy Farmers of America*, Dairy Farmers of America (DFA), a Kansas cooperative with its principal place of business in Missouri, sued Bassett & Walker International, a Canadian corporation, alleging breach of contract. *Dairy Farmers of America*, 702 F.3d at 474. The lawsuit was filed in the United States District Court for the Western District of Missouri, where the district court dismissed for lack of personal jurisdiction. The Eighth Circuit affirmed. DFA and Bassett had a five year relationship consisting of more than 80 separate transactions, totaling $5 million and 3.5 million pounds of dairy products from DFA. *Id.* The contracts were not negotiated in Missouri, and no Bassett employee ever travelled to Missouri. Instead, the contracts were negotiated over the telephone and through email between Bassett's representative in

11

Canada and DFA's representative who lived in Michigan. *Id.* Each transaction was approved by DFA's Missouri headquarters. *Id.* Bassett communicated by phone and email with DFA's Missouri location about delivery and billing. Bassett also received a line of credit from DFA in Missouri. Although no product was manufactured in or shipped to or from Missouri, DFA's Missouri headquarters determined the price and quantity of the products, processed purchase orders, generated invoices, processed payments, coordinated inventory, and administered the preparation of shipping documents. *Id.* at 474, 478. Payment for the product was remitted to Illinois. *Id.* Based on those facts, the Eighth Circuit determined that even if Missouri's long-arm statute had been satisfied, Bassett did not have sufficient minimum contacts with Missouri to satisfy due process. *Id.* at 477-78. Remarking that *Scullin* and *Wells Dairy* guided its analysis, the Eighth Circuit compared Bassett's actions within Missouri to NRUC's actions in *Scullin* and FMI's actions in *Wells Dairy*. *Id.* at 477-78. Acknowledging that like FMI, Bassett sought and received credit from a company in the forum state and solicited business in the forum state, the Eighth Circuit concluded that Bassett's contacts with Missouri were nonetheless insufficient to satisfy the Due Process Clause. *Id.* In particular, negotiations for the contract did not occur in Missouri, the contract did not contemplate that DFA would perform coordination and processing in Missouri, Bassett contracted for a product that was not manufactured or shipped from or to Missouri, and payment was not remitted to Missouri. *Id.* at 478-79. Unlike FMI in *Wells Dairy*, who "contracted to purchase on credit product manufactured in [the forum state] for delivery [in the forum state] and to remit payment to [the forum state] . . . nothing in Bassett's

12

contract to purchase on credit product manufactured in Colorado for delivery in Mexico and to remit payment in Illinois alerted Bassett that it should reasonably anticipate being haled into court on that contract in Missouri." *Id.* at 479.

Having considered *Scullin*, *Wells Dairy*, and *Dairy Farmers of America*, this Court concludes that taken together, Holiday Image's contacts with Missouri amount to the minimum contacts required by due process. Like in *Wells Dairy*, where the Eighth Circuit concluded that FMI had made sufficient minimum contacts in Iowa, Holiday Image solicited Zucker Feather knowing it was a Missouri corporation, negotiated and formed the contracts at issue in Missouri, sought and received credit from Zucker Feather in Missouri, and was invoiced from and remitted payments to Zucker Feather in Missouri. Although the wings were ultimately manufactured and shipped from China to Ohio, Holiday Image knew that significant, substantive preparation occurred in Missouri before the wings were mass produced. The custom, substantive preparation distinguishes this case from *Dairy Farmers of America*, where the Eighth Circuit acknowledged that coordination and preparation of orders occurred in the forum state, but concluded that sufficient minimum contacts did not exist. Holiday Image sent dozens of samples, prototypes, and specification books to Missouri knowing that Zucker Feather employees would analyze, dissect, and reproduce prototypes in Missouri that would satisfy both Holiday Image and Victoria's Secret. Unlike in *Dairy Farmers of America*, more than just administrative coordination and processing occurred in Missouri. The work that occurred in Missouri was essential to the production of the wings, and ultimately, to the fulfillment of the contracts at issue. *See Pro Axess, Inc. v. Orlux*

13

*Distribution, Inc.*, 428 F.3d 1270 (10th Cir. 2005) (holding that sufficient minimum contacts existed in Utah because, although the product was manufactured in China and shipped to France, the defendant solicited plaintiff in Utah and had contracted with the plaintiff previously and because "services necessary for the contract were to be performed in Utah," including arranging for rough handmade models to be made into machined prototypes, choosing a manufacturer, arranging the details of manufacturing, and arranging for shipment to France). And while neither the purchase orders nor the sales confirmations contemplated that work would be performed in Missouri, Holiday Image knew from its three year course of dealing with Zucker Feather prior to the 2014 holiday season that this custom work would occur in Missouri. S*ee Dairy Farmers of America*, 702 F.3d at 477 (stating that in contract cases, a court should consider prior negotiations and contemplated future consequences and the parties' actual course of dealing). Despite knowing that significant work was performed in Missouri, Holiday Image still solicited Zucker Feather for production of the 2014 holiday season wings. *See Pro Axess*, 428 F.3d at 1277 ("[F]ulfilling the contract required a continuing relationship based on the provision of services. By procuring such services from Pro Axess, which operates its business in Utah, Sporoptic purposefully availed itself of the privilege of conducting activities within the state.").

Likewise, the work performed by Zucker Feather in Missouri was not the kind of "unilateral action" described by the Eighth Circuit in *Scullin*. Rather, Holiday Image's contacts with Missouri were part of a deliberate, collaborative effort whereby Holiday Image relied on the expertise of Zucker Feather in Missouri. The prototypes and the

14

work performed by Zucker Feather in Missouri were the subject of numerous, detailed telephone conversations and emails between Zucker Feather and Holiday Image. And while communication with the forum state that occurs only via telephone or mail is insufficient, standing alone, to satisfy due process, more than just conversations via telephone and email occurred. Over four holiday seasons, Holiday Image purposefully availed itself of the privilege of conducting activities within Missouri when it solicited Zucker Feather in Missouri, negotiated contracts with Zucker Feather in Missouri, submitted purchase orders to Zucker Feather in Missouri on credit it received from Zucker Feather in Missouri, sent and received dozens of samples integral to the production of the wings to and from Missouri, and worked extensively with Zucker Feather in Missouri to analyze, dissect, and produce wings that would satisfy Victoria's Secret's specifications. Holiday Image's failure to pay for the wings directly affected Zucker Feather and its employees in Missouri, and because payments were due to Missouri, the injury occurred in Missouri. These actions are not merely "random, fortuitous, or attenuated." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 486 (1985).

  Moreover, Missouri, as the forum state where the injury occurred, has an interest in providing a forum for Zucker Feather, a Missouri corporation. Defending a case in Missouri may be inconvenient for Holiday Image, but it would be no more inconvenient than requiring Zucker Feather to bring its lawsuit in New York or New Jersey, where, presumably, Holiday Image suggests it should be. Further, Holiday Image has demonstrated that it was capable of travelling as far as China to visit Zucker Feather's factory, so limited trips to Missouri for discovery, pre-trial, and trial related matters

15

should not significantly burden the company. This Court's exercise of personal jurisdiction over Holiday Image is consistent with traditional notions of fair play and substantial justice. It is also permitted by Missouri's long-arm statute. Therefore, Holiday Image's Motion to Dismiss for Lack of Personal Jurisdiction is denied.

## III. Conclusion

For the reasons set forth above, Holiday Image's Motion to Dismiss for Lack of Personal Jurisdiction, [Doc. 18], is denied.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: March 19, 2015  
Jefferson City, Missouri